Austin Trout v. Org. Mundial de Boxeo, Inc. Miguel Ortega Nunez v. Plaintiff Appellant Section 35D of the WBO Championship Rules cards an exception to the arbitration clause contained therein. This exception is made strictly on the basis of whether the WBO is made a party to a case or not. The Section 35D clearly states that in such cases in which the WBO is made a party, the exclusive venue is the State Courts of Puerto Rico or the Federal Courts of Puerto Rico, if applicable. Here the parties are citizens of different states, the claim surpasses the jurisdictional amount, and there are claims under federal legislation. Furthermore, as to the claims that can be brought against the WBO in State or Federal Courts, Section 35D establishes that those claims include, but are not limited to, the interpretation and the enforcement of the WBO Championship Regulations. Section 35D does not state any and all actions that are non-arbitrary in which the WBO is made a party, nor does it say any action not subject to arbitration in which the WBO is made a party. Section 35D states any and all actions in which the WBO is made a party. As to this precise argument, I must also bring to your attention the fact that the scope of the arbitration clause does not cover, as well, claims under the Muhammad Ali Act or claims for fraud. And I will tell you why. I express the point of view as to why the Muhammad Ali Act is not subject for arbitration, and that's a very important inquiry. But we must also make an equally important inquiry, which is if this specific clause, if this specific arbitration clause entails actions under the Muhammad Ali Act, because this claim, this complaint, specifically in Appendix Excuse me, Counsel. Yes, sir. You don't have a lot of time. I'd like you to address the waiver issue. Yes, Your Honor. And in asking you to do that, I want to understand what did they actually do that constituted a waiver in their litigation conduct? For example, when the case is transferred to Puerto Rico, I mean, you point out that a lot of discovery takes place, but almost all of that discovery is at your initiative. Isn't that correct? Aren't you the one filing interrogatories, seeking the opportunity to take depositions? I mean, you're the one, not entirely, but for the most part, you're the one who's conducting the discovery, not them. Isn't that true? Not, Your Honor. Okay. What happened here was that the case was originally filed in November 2015 in the state of New Mexico. In February, the WBO made a notice of removal. Without asking for arbitration, they made a notice of removal to the Federal District of New Mexico in February 2016. When they are in February 2016 at the district level in New Mexico, they filed first a motion to dismiss under 35D, not under the arbitration clause, under 35D for the case to be taken to Puerto Rico. That motion was denied, but they refiled a motion for change of venue. Similarly, identically, under 35D. And it's not like the way and manner in which they alleged this. They say the contract venue provision here is mandatory. In clear language, it provides that the exclusive venue may be maintained only in the Commonwealth of Puerto Rico for actions concerning enforcement or interpretation of the WBO's regulations. This provision does not merely permit the body to litigate in the Commonwealth of Puerto Rico. It requires it. These are WBO's averments prior for asking arbitration. And this might have taken place in New Mexico, your honors, but this is part of this docket. Those averments. So what is your point, counsel, that they're saying to the court in New Mexico by describing this clause that we want to go to Puerto Rico because we want to litigate in the federal court in Puerto Rico? They're not talking about arbitration. They're representing the court that we want to be there so we can be in the federal court in Puerto Rico? Not only that, your honor, I go further. I say that by saying this, they're saying that they're required. It's even more. It's not that we want to. It's that we're required to. And that motion was granted. And the only reason this case arrived in the District of Puerto Rico is because for 18 months the WBO argued that 35D was controlling. But it depends if all they're saying is any action has to be in Puerto Rico. And this was an action, therefore it has to be in Puerto Rico. And that's all they're saying. If that's all they're saying, they're not committing to whether once it's resolved whether it's arbitrable or not, which is the subject of the action, that's got to be done by a court in Puerto Rico, not in New Mexico. I understand that, your honor. But have they thought, let's assume argument, of course we oppose, but let's assume argument that the arbitration clause is binding. Then no other forum was appropriate. And they had the opportunity to ask for arbitration at the state court level in New Mexico. They didn't. They had the opportunity to ask for. No, under the forum selection clause, they're not supposed to ask the New Mexico court for the right to arbitrate. They have to go to Puerto Rico to do that. I think they can ask for that if the only clause, the only forum that will be available for the parties to pursue their claims was arbitration. They should have asked it as well. I don't want to jump to a different issue, but do you have a question on this topic? No. Okay. On the issue of the provisions for how the arbitration is conducted, am I right that under the rules, the defendants here can choose anyone who's not a director in the organization to be the arbitrator and that they exclusively get to determine who the arbitrator is? Your Honor, under the WBO appeals regulation, the president of the WBO selects the three-man panel or woman panel who is going to decide. And what are the limitations on whom he can select? It doesn't say that. Could he select himself? Yes. And he can take them out at will. Was your client aware of those provisions when he became a member of the WBO? Your Honors, and this is something I must address. The short answer is he has to be. He's an adult. But the large answer is that that's not the way things happen in boxing. And precisely that is why there is such an expectation with the Mohammed Ali Act, because certainly that's not the way it happens, Your Honor. And here, what we will be asking is the WBO to render a verdict over allegations that the WBO accepted favors and money from promoters in order to take my client from the rankings and give that promoter's protege a shot at the title. So they, a committee, selected and under the ---- about the problem with allowing the arbitrator to be selected by one party, totally discretionary, including even the head of the organization. One would be it's a challenge on contract grounds as a matter of Puerto Rico law. Another possibility is the source of the problem is implicit in the Mohammed Ali Act itself because it's inconsistent with its purposes to allow it to be defeated in that manner. And I guess a third would be some federal common law or implicit interpretation of the Federal Arbitration Act itself about limitations on statutory rights. Which one, do you have a view as to, and I've seen different courts seem to select different approaches to thinking about when an arbitration provision has such an unfair proceeding, if this, in fact, is one, that you can't allow a statutory right to be subject to arbitration in those circumstances? Yes, Your Honor, and precisely as to the adequacy of a forum, we cited Ulysses v. Romano, which the Oromo District Court filed inapplicable, inopposite to the arbitration issue. And, brother, the counsel, of course, agree with the instant court. However, however, Your Honor, I believe that the standard established in Ulysses v. Romano as to the adequacy of a forum can be applied to the issue at hand. But is that a Puerto Rico contract law point? Yes. But do you make a separate, I thought you were impliedly making a separate argument about the Mohammed Ali Act itself. Of course. And its purposes being inconsistent, which I've seen other courts do with respect to Title VII. Of course, Your Honor, and that's in the brief, and it would be several instances in which congressional intent. However, our point is that. And if we were to agree with you on that point, what then happens? Do we default to the severability question of what's under the contract? Well, Your Honor, the way I see it is that the contract includes an exception to the arbitration clause. And inasmuch as the WBO is a body, then the arbitration. But if the only reason for the problem is that the means of selecting the arbitrator is the problem, I thought there was a default provision in the contract for what the alternative procedure for selection would be. There is no alternative procedure, just the one that it says in the WBO rules and regulations, which I think were attached to the WBO's opposing brief. Okay. But this procedure is not an arbitration procedure, Your Honor. If you read it, you will see that it does not comply with the American Arbitration Act, and it goes against the Mohammed Ali. If I may, five seconds, Your Honor. For centuries, literally, boxing has been waiting for a legislation like this. The forum in which boxers will go to vindicate their rights in an impartial and objective manner is in your hands. Please give boxers a chance. Thank you very much. May it please the court. Edward Gricko for the WBO. I want to know the Hooters and McMullen cases. I'm sorry, Your Honor. Are you aware of the Hooters and McMullen cases, for example? I may be, but not necessarily. Well, they hold that it's contrary to the policies of the federal law. Yes. They have appointments provisions such as the ones that you have here, where one party can appoint the arbitrators, and they hold that those provisions are invalid. Yes, Your Honor. I did find those cases. I didn't remember them by name, but I certainly remember them by holding. But doesn't that sort of sink you here in terms of trying to enforce the arbitration clause the way it's written? Well, no, Your Honor, because there are two viewpoints on that very question that addressed by or were taken by the cases Your Honor has cited, but also that taken. Well, it leads to a question of remedy, but you can't enforce an arbitration clause that allows one party to pick the arbitrators, can you? Well, Your Honor, in Willis and Davis, the two cases we cited in our brief, the courts took a different approach to the question of the enforceability of an arbitration provision that allows selection of the arbitrators by one party. And that result was, I guess I would describe it as a wait-and-see approach. That is, they rejected the idea that a selection provision that says one party picks is facially or per se invalid or unenforceable. And those courts point out that it's more consistent with the policy of the Arbitration Act, and I would add it's, I think, more consistent with the Puerto Rican law presumption of good faith performance of a contract, that you take an opportunity to see how the party that has the option to select arbitrators exercises that option. Were those federal statutory rights in those cases? I don't believe so, Your Honor. Well, does that matter some? Because the McMullen case is a federal statutory right case. It's Title VII, and the thought would be it's a little bit surprising to think that a statute that's designed to protect people from discriminatory action by their employers is going to be adjudicated by the employer choosing an arbitrator under their control that they solely select, subject only to whatever higher standard of review we then have for showing bias afterwards. And here, given the express purposes of the Muhammad Ali Act, it seems a little surprising that Congress would have written that act and then thought the boxing association should just choose who adjudicates whether they're following their procedures fairly. Well, Your Honor, I think it's significant that Your Honor has mentioned the Ali Act, which is, of course, one of the bases of the plaintiff's claims here. Because the Ali Act in Section 11D1C requires sanctioning organizations like the WBO to have an appeal procedure with respect to rankings of boxers. And so we're --. It doesn't say anything about your choosing all the arbitrators. Well, Your Honor, I think --. That seems to cut against you. We're very worried they're not following their rankings. And to solve that problem, we want to give them the option of having the head of the organization determine whether they complied with our statute. Well, that's not exactly the case, Your Honor. Well, that certainly isn't that possible here? The way this arbitration clause is written, you could appoint, the head of the organization could appoint himself to decide whether he followed the statute. Is that right? No, Your Honor. The way the arbitration provision is written, at least the members of the Executive Committee of the WBO are excluded from being members of the Grievance Committee, the arbitrators. And so, and then --. So he could pick his special assistant. He could pick someone who's not on the Executive Committee. Would that include his special assistant? I think it would, Your Honor. Yeah. And I would go back to the cases suggesting that. So you think that would be a plausible way of understanding Congress's desire to make sure that boxing federations follow these procedures, that the head of them could choose their special assistant to decide whether they were in compliance with that legislative command? If he were to do so, Your Honor, that would at least arguably, subject to proof, be a breach of the contractual term, the arbitration term, requiring that the members of the Grievance Committee be fair and independent arbitrators. And that the arbitral body be, and we lapse into two different languages here, amiable compositores and rule ex equia bono. All of that in three languages. You're not suggesting that we have to read the arbitration provision to suggest that the person who is the arbitrator can't be an employee of the federation, are you? I'm suggesting, Your Honor, that the arbitration provision, as written in total, requires fair and independent arbitrators that rule on the basis of equity and right. Suppose we reject that and we conclude that this provision in the regulations, which allows the head of the WBO to choose the arbitrators, is invalid. Where do we go from there? Because then there's the question of whether you, the default, is to have the district court appoint arbitrators pursuant to Section 5 of the Arbitration Act or whether the whole arbitration provision of the statute, of the WBO, falls. And the cases address that. And so where do we go if that's the conclusion that we reach? You go, Your Honor, to the severability provision in the arbitration agreement. You sever the arbitrator selection aspect of it, which, if the court finds that unacceptable, and you're left with an arbitration agreement calling for arbitration but with an unenforceable selection provision, in which case the Arbitration Act provides the remedy the district court may select in its supervisory capacity, neutral arbitrators. And that achieves the greatest part, then, of the arbitration provision, consistent with the policies of the Arbitration Act, only excising the part that the court, if it were, would find unenforceable. So there is a remedy here that preserves the arbitration remedy, even if the arbitration selection process fails. I wouldn't concede that there's a fault in the arbitration selector provision that warrants its excision, of course, and I would point to the district court cases that we cited in our brief and the reasoning in those cases as a basis for that position. But I recognize the court has precedent in the other direction. It might find more persuasive. Counsel, once this case was transferred to Puerto Rico, and you indicated when you filed your answer that you also were seeking to compel arbitration, and yet often in situations like that a party in the position of your client would then seek a stay of any discovery, theory being if we're going to go to arbitration, why should we have to go through all the burdensome discovery? But you never did that. You allowed the discovery to proceed for quite some time. You actually sought some continuances of the discovery deadline. Why isn't that litigation conduct incompatible with your assertion that you continue to have a right to compel arbitration? Haven't courts found that that kind of litigation conduct constitutes a waiver, the right to seek arbitration? It's a matter of degree, Your Honor. Courts have found that when a party engages wholeheartedly, full force in the discovery process, as well as when, of course, the party seeks an adjudication on the merits or steps in that direction by a court, a tribunal, that that can be and is a waiver of arbitration. We didn't reach that point in this case. Of course, none of the proceedings up to the time we joined issue on the merits by filing an answer and invoking arbitration had anything to do with the merits, and we never moved for summary judgment. We never sought a trial setting. We never had a trial setting. But let's look at the discovery process. As far as discovery is concerned, up until the time that the WBO invoked arbitration with its answer, there was minimal discovery undertaken by the plaintiff only. You filed one set of interrogatories and one set of requests for production in the New Mexico District Court. The WBO undertook no discovery at the time that it had filed its motion to compel arbitration. In fact, it hadn't even responded to the discovery propounded by the plaintiff. You did seek discovery. We then sought discovery, but not for another multiple months, Your Honor, at which point the discovery period set by the District Court's case management order was drawing to a close. We did not have a ruling yet on our motion to compel arbitration, and we were in the position of potentially. Why did you never seek a state of discovery? That would have been the simplest, most direct, cleanest way of avoiding the burden of discovery for both parties if you were determined to pursue arbitration. Your willingness to allow discovery to unfold for months and months and months, regardless of whoever was doing it, seems entirely incompatible with your determination to pursue arbitration. Well, Your Honor, I think. Isn't it true that often parties in the position of your client does seek a state of discovery in exactly this situation? My time is up. May I respond? Please. Of course. Thank you. I think it's true that was one course of action, and it's certainly not an uncommon course of action. My sense in this case was that, and I was not trial counsel, but my sense in this case was that the WBO was as interested in expedition as it was in arbitration, and it didn't take steps to delay the process in the District Court, confident that it would achieve its goal of attaining arbitration when the District Court ruled. But when that time progressed well into the discovery period and the WBO had yet to undertake discovery, it had to. And I take it there was no effort by the opposing counsel to suggest that even though the motion to compel arbitration was pending during that whole period, there was no effort to suggest to the District Court that the motion was effectively waived by your taking the discovery during that period? I think that. Was that wrong? Was there a suggestion of waiver below? Yes, Your Honor. And at what point was that made? In the briefing on the motion to compel arbitration. Waiver was raised by the other side, and our response was similar to what I said. No, but I thought if I had followed the timeline you just gave, after you answered by raising the desire to compel arbitration, you then proactively sought discovery some of that period of time because no ruling had been made on the motion to compel arbitration. Is that right? That's right, Your Honor. Okay. During that period of time, did opposing counsel ever make a motion to the District Court to suggest that you had effectively waived the motion to compel arbitration by virtue of proactively seeking discovery while the motion was pending? No, Your Honor. During the time that the motion was pending and the briefing on it had closed. There was no suggestion of waiver at that point. No, Your Honor. The only waiver motion was in response to the earlier period in which some discovery had occurred in which you hadn't proactively engaged. That's correct. I'm sorry, I missed the timeline a little bit there. I wonder if this doesn't look a little bit as though what's going on here is prolonging this case with the hope that it might become moot. I don't expect so, Your Honor. I can't speak for what's in anyone's mind but my own, but I don't see that this is a case that would become moot by simply the passage of time. At some point it would become too old a box. Oh, indeed. But that doesn't erase if he has a claim for damages caused by past conduct. That claim certainly would survive. We dispute that on the merits, but we, of course, have not engaged on the merits at this time. If the Court has no further questions, I thank you.